**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | | |
|---|---|---|
| NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| UNITED STATES, | ) | No. 06-607 C (Judge Block) |
| Defendant, | ) | |
| and | ) | |
| LOCKHEED MARTIN SERVICES, INC., | ) | |
| Movant for Intervention for a Limited Purpose. | ) | |

**MOTION TO INTERVENE FOR A LIMITED PURPOSE**

Pursuant to RCFC 24, Lockheed Martin Services, Inc. ("Lockheed Martin" or the "Company") respectfully requests that it be permitted to intervene in this bid protest as of right, for the limited purpose of protecting its trade secrets and other proprietary information from potential release. Lockheed Martin seeks access for its outside counsel to documents submitted under seal in this lawsuit (*i.e.*, admission under the Protective Order), including the administrative record and any submissions to the Court that may contain references to protected material, *e.g.*, briefs that may be redacted before being released to the public. Lockheed Martin seeks this limited-purpose intervention so its counsel can directly protect the Company's interests by all appropriate means.

**1.** This bid protest involves a public-private competition that was conducted by the U.S. Army Corps of Engineers ("USACE") pursuant to the Office of Management and Budget's ("OMB") Circular No. A-76. Competitions under Circular No. A-76 involve determinations as to whether a commercial activity can be performed most efficiently for a Government agency by implementing a staffing plan referred to as the agency's Most Efficient Organization ("MEO"), which is developed on behalf of the agency's federal work force and contractors, or by entering into a contract with a private offeror, which competes with the MEO in an A-76 procurement competition. The A-76 competition that is the subject of the protest related to the USACE's information management and information technology ("IMIT") functions.

During an early phase of the competition, the MEO decided to seek a principal subcontractor with which it would work in developing and submitting its proposal (which is called the "Agency Tender" in the A-76 context). Both Northrop Grumman Information Technology, Inc. ("NGIT") and Lockheed Martin submitted proposals to become the MEO's subcontractor. After evaluating the respective offers, the MEO determined that Lockheed Martin was the best offeror for the subcontractor position. Lockheed Martin later became a sole source of subcontractor services to the MEO.

The MEO presumably chose Lockheed Martin as its subcontractor because, during its many years of involvement in this industry, Lockheed Martin has developed an innovative approach for structuring the provision of information technology and other services to Government customers. The systems and methodologies applied by Lockheed Martin in developing (or assisting with the development of) a solution for an

agency's staffing and related requirements constitute highly valuable trade secrets and proprietary information belonging to the Company.

Lockheed Martin voluntarily provided its proprietary processes and methodologies to the MEO under a written agreement of confidentiality. At its own cost (and risk), Lockheed Martin assisted the MEO with the preparation of the Agency Tender. As a result of Lockheed Martin's collaboration with the MEO, Lockheed Martin's unique, trade secret approach to creating innovative solutions to highly complex staffing needs of federal and state agencies is reflected in numerous parts of the Agency Tender (among other documents). That highly sensitive information includes not only Lockheed Martin's confidential processes and methodologies by which the provision of services to Government customers is structured and restructured, but also Lockheed Martin's technical and cost/price information.

No one can seriously dispute that Lockheed Martin's processes and methodologies are the exclusive property of the Company. Nor can it be disputed that the disclosure of these systems and methodologies would cause irreparable harm to Lockheed Martin, as the Company would lose its hard-earned competitive advantage with respect to numerous public-private competitions. For instance, if Lockheed Martin's competitive information, which is be found in the Agency Tender, were inappropriately revealed, a competitor such as NGIT could replicate Lockheed Martin's processes and methodologies to derive solutions for other agencies' and businesses' IMIT and other requirements. NGIT or another competitor could do so without making the investment in time and other resources that Lockheed Martin has made to develop

its unique approach. The competitor could then employ a similar (if not identical) approach in proposals for future competitions, thereby reducing its costs and depriving Lockheed Martin of the competitive advantage it should – and currently does – enjoy. Alternatively, by using the insights afforded by the description of the approach in the Agency Tender, a competitor could seek to undermine the approach or distinguish critical elements of its approach to its advantage. Lockheed Martin would lack corresponding information about the competitor's approach, and thus would suffer a significant competitive disadvantage.

Vigilant protection of Lockheed Martin's trade secrets and proprietary methodologies is vitally important for the Company. By applying its processes and methodologies in A-76 (and similar) competitions, Lockheed Martin has been successful in recent years, receiving awards for information technology services contracts with a total approximate value of more than $3 billion from numerous Government agencies. What is more, these processes and techniques will be directly relevant to, and play significant roles in, Lockheed Martin's likely approach to competitions for information technology (and other) contracts valued at approximately $4 billion during the next twelve months. Lockheed Martin's business prospects with respect to these procurements could be harmed by the release of various parts of the MEO's Agency Tender (which, in part, reflects Lockheed Martin's trade secret processes) – or even an unredacted description of parts of the Tender in a brief that is made public.

**2.** Lockheed Martin seeks to intervene in these proceedings for the limited purpose of protecting its trade secrets and other proprietary information – which is

presumably found throughout the Administrative Record.[1] Lockheed Martin should be permitted to intervene in this action, for the limited purpose described above, as a matter of right.

RCFC 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties.

Lockheed Martin is clearly an "interested party" for purposes of Rule 24(a), as well as under the applicable jurisdictional statute, 28 U.S.C. § 1491(b)(1). Generally, parties "whose direct economic interest would be affected by the award of the contract or by failure to award the contract" qualify as interested parties and for purposes of intervention in bid protests. *Galen Medical Associates, Inc. v. United States*, 56 Fed. Cl. 104, 108 (2003) (quoting *American Federation of Government Employees v. United States*, 258 F.3d 1294, 1299-1302 (Fed. Cir. 2001)). As the sole source subcontractor to the prevailing MEO in the A-76 competition, Lockheed Martin has a direct economic interest in the outcome of the contract award and these proceedings.

Lockheed Martin does not seek intervention *as a full party* in this bid protest because, at this time, it appears that Government counsel is adequately representing

---

[1] Undersigned counsel have not yet seen the Administrative Record, which we understand has been submitted, in part, to the Court and provided to NGIT's counsel. The Agency Tender is part of the "core documents" described by the Court's Rules, *see* RCFC App. C, ¶ 22(*l*), and thus was presumably included.

Lockheed Martin's economic interest in the substantive outcome of the lawsuit, *i.e.*, whether the USACE's procurement decision is sustained. However, intervention in federal court litigation is not an all-or-nothing proposition. Indeed, it is well-established that an applicant "may have a sufficient interest to intervene as to certain issues in an action without having an interest in the litigation as a whole." *Harris v. Pernsley*, 820 F.2d 592, 599 (3d Cir. 1987); *see*, *e.g.*, *Bradley v. Milliken*, 620 F.2d 1141, 1142-43 (6th Cir. 1980); *United States v. AT&T*, 642 F.2d 1285, 1291 (D.C. Cir. 1980).

In this case, Lockheed Martin actually has an interest in the litigation as a whole, but believes that, for now, its interest with respect to many of the issues are being adequately represented by one of the parties, *i.e.*, the Government. Undersigned counsel have worked with Government counsel, who has been solicitous of, and helpful with respect to, Lockheed Martin's need to protect its trade secrets and proprietary information. But Government counsel is appropriately focused primarily on the defense of the procurement, as a whole. Protection of a subcontractor's proprietary interest is one of many of the Government's concerns. Although Lockheed Martin has an economic interest in the outcome of this litigation and whether it ultimately works as the subcontractor to the MEO in this procurement, its interest in protecting its trade secrets and proprietary rights involves important strategic business considerations and competitive advantages that are clearly longer-term and more expansive than the Government's interest in that regard.

In short, because of its other responsibilities in this litigation, the Government cannot adequately represent Lockheed Martin's vital interest with respect to the

potential release of Lockheed Martin's trade secrets and proprietary information and the impact of any such release, disclosure, or use on future business opportunities. The United States Supreme Court has held that the burden of demonstrating inadequacy of representation "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *see AT&T*, 642 F.2d at 1293 ("petitioner 'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee'" (quoting 7A Wright & Miller, *Federal Practice and Procedure* § 1909, at 524 (1972))); *Honeywell Int'l, Inc. v. United States*, 71 Fed. Cl. 759, 765-66 (2006).

The "minimal" burden that an intervenor must meet with respect to the lack of adequate representation is clearly satisfied when neither of the parties has the same vital need to protect the potential intervenor's proprietary interests. Indeed, this Court recently allowed intervention for the same limited purpose of protecting trade secrets and proprietary information of a nonparty because the Government did not have the same interest in protecting that proprietary information as its owner.

In *Armour of America v. United States*, 70 Fed. Cl. 240 (2006), a contractor that was terminated for default sued the Government, and during discovery, the Government inadvertently released proprietary information belonging to a different contractor, *i.e.*, the winner of the reprocurement for the same requirements. The contractor whose information had been released then sought to intervene for the limited purpose of "protect[ing] against harm caused by the release of [its] proprietary information"

during the proceedings. *Id.* at 242. Among other things, the proposed intervenor sought the ability to file motions (and briefs) regarding issues concerning protective orders and amendments, "the right to participate in discovery as an intermediary to prevent further release of proprietary information," and "relief appropriate to prevent future release of proprietary information." *Id.*

The Court began its analysis by recognizing that the intervenor's "trade secrets and other confidential proprietary information" are "clearly owned by [the intervenor] and constitute . . . a substantial ownership and property interest which is the product of significant investment in research and development . . . and which provide[] . . . a competitive advantage." *Id.* at 243-44. Although the Government had previously given the intervenor an "active role" in addressing issues related to the procedural order, the Court explained the common-sense notion that "the party" whose property interests are at stake is "in the best position to determine how to protect its interest." *Id.* at 245.

Lockheed Martin is in the same position as the intervenor in *Armour of America* and should be afforded similar relief. Although Government counsel has worked with undersigned counsel to protect against improper release of trade secrets, Lockheed Martin is entitled to have its own counsel be given access to a record containing its proprietary information, so that counsel who are focused on Lockheed Martin's interests can make any appropriate and timely objections to prevent improper releases of the Company's trade secrets and proprietary information.

**3.** Finally, the limited-purpose intervention Lockheed Martin seeks will not result in any harm to either the Court's proceedings or to either of the parties. For

instance, no delay or additional burden with respect to the merits will result from the relief sought in this motion, because Lockheed Martin does not intend to submit briefs with respect to the merits of the protest; nor does Lockheed Martin intend to address the Court with respect to the merits of the protest during oral arguments or hearings.

Lockheed Martin's role before the Court, like that of the intervenor permitted in *Armour of America*, will be limited to "protect[ing] against harm caused by the release of [its] proprietary information" during these proceedings. *Armour of America*, 70 Fed. Cl. at 242. Specifically, Lockheed Martin will: (1) examine all uses of its proprietary information in the record, in the parties' briefs, and during oral arguments; (2) analyze applicants who may be given access to (and use of) Lockheed Martin's proprietary information under the Protective Order; (3) monitor and seek to prevent the potential release of its proprietary information by means of redacted versions of briefs that may reference its proprietary processes or methodologies; (4) address necessary limitations on any future use by parties other than Lockheed Martin of its proprietary information; and (5) focus on the manner in which documents reflecting its proprietary information are disposed of at the conclusion of these proceedings.

In addition, no substantial additional risk of improper release of protected material will result from admission of Lockheed Martin's counsel under the Protective Order. Undersigned counsel have substantial experience working under such orders from this Court and the Government Accountability Office (among other forums) and scrupulously monitor adherence to all applicable requirements.

**4.** Undersigned counsel has spoken to counsel for the Government, who does not object to Lockheed Martin's motion to intervene for the limited purpose described above. We have also spoken to plaintiff's counsel, who has indicated that NGIT is not in a position to consent or object to Lockheed Martin's motion at this time, but intends to state its position after reviewing this motion.

**CONCLUSION**

For the reasons set forth above, Lockheed Martin respectfully asks the Court to grant this motion to intervene in this lawsuit for the limited purpose of protecting Lockheed Martin's trade secrets and other proprietary information from improper use and release.

Respectfully submitted,

s/ Marcia G. Madsen

MARCIA G. MADSEN
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, NW
Washington, D.C. 20006
(202) 263-3000
(202) 263-3300 Facsimile

Of Counsel:

LUKE LEVASSEUR
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, NW
Washington, D.C. 20006

*Counsel for Intervenor, Lockheed Martin Services, Inc.*
September 15, 2006