# United States Court of Federal Claims

**No. 06-607 C**
**November 7, 2006**

---

**Northrop Grumman Information Technology, Inc.,**

***Plaintiff*,**

**v.**

**United States of America,**

***Defendant*,**

**and**

**Lockheed Martin Services, Inc.,**

***Intervenor*.**

---

RCFC Rule 24(a)(2); Motion to Intervene; Limited Intervention; OMB Circular No. A-76; FAIR Act 31 U.S.C. § 501; Trade Secrets

*William W. Thompson, Jr.*, *Michael A. Branca* and *Lori Ann Lange*, Peckar, Abramson, Bastianelli & Kelley, LLP for the plaintiff.

*J. Reid Prouty*, Commercial Litigation Branch, United States Department of Justice, for the defendant.

*Marcia G. Madsen* and *Luke Levasseur*, Mayer, Brown, Rowe & Maw LLP for the intervenor.

## OPINION AND ORDER

**Block, *Judge*.**

Before the Court is a motion by Lockheed Martin Services, Inc. ("Lockheed") to intervene in the this matter pursuant to the Rules of the United States Court of Federal Claims ("RCFC") Rule 24(a)(2) for the limited purpose of protecting its trade secrets and other proprietary information. The Court finds that Lockheed has a sufficient property interest subject to this action, that its ability to protect that interest may be impeded by the action, and that its interest is not adequately represented by the existing parties. Therefore, Lockheed's motion to intervene for a limited purpose is granted pursuant to this opinion.

## BACKGROUND

This case concerns a procurement for Information Management and Information Technology ("IM/IT") by the United States Army Corps of Engineers ("the Corps") pursuant to the Office of Management and Budget's ("OMB") Circular No. A-76 May 29, 2003 ("A-76") public-private competition. A-76 is the means by which the OMB effectuates the "longstanding policy of the federal government . . . to rely on the private sector for needed commercial services [and] [t]o ensure that the American people receive maximum value for their tax dollars, commercial activities should be subject to the forces of competition." Office of Mgmt. & Budget, Executive Office of the President, OMB Circular No. A-76, Performance of Commercial Activities (2003). A-76 derives its authority from Federal Activities Inventory Reform Act of 1998 ("FAIR Act"). 31 U.S.C. § 501 note (1998). The FAIR Act requires government agencies to identify activities that are currently performed by the government that are commercial in nature as opposed to inherently governmental. *Id.* Under the FAIR Act, once an agency determines that certain activities are commercial in nature those activities are subjected to the competitive bidding process.[1] A-76 establishes the guidelines for that process.

Activities government agencies identify as commercial in nature are not automatically privatized. Instead, a procurement is offered in which the agency is entitled to compete with the private sector in a public-private competition. The agency competes through the creation of a reified fictional entity called the Most Efficient Organization ("MEO"). The MEO is comprised of the agency's staffing plan that would assume or continue conducting the activities that are subject to the A-76 competition. However, "the MEO is not usually a representation of the incumbent organization, but is the product of management analyses." OMB Circular No. A-76 (2003), Attachment B. The "MEO may be comprised of either (1) government personnel or (2) a mix of government personnel and MEO subcontractors." *Id.* The MEO is represented in the bidding process by the Agency Tender Official ("ATO")[2] and its bid is referred to as the Agency Tender. The lowest price acceptable offer, either from a private sector bidder or the MEO, is awarded the contract for the activities subjected to the competition.

In 2004, the Corps identified all of it's IM/IT services throughout the continental United States as activities not inherently governmental, but rather commercial in nature. Administrative Record ("AR") 8-9. The Corps decided to conduct a public-private competition for its IM/IT services and, pursuant to the A-76 regulations, formed a MEO to take part in the competition. *Id.* The scope of the competition included, "IMIT Management, Automation, Communications, Information, Assurance, Records Management, Printing and Publications, and Visual Information. The [winner of the competition] would provide personnel, equipment, tools, supplies, materials,

---

[1] The competitive bidding is governed by the Federal Acquisitions Regulations subject to certain limitations established by A-76. OMB Circular No. A-76 (2003), Attachment D.

[2] The ATO is a governmental agency official with decision-making authority independent of the Contracting Officer ("CO"), source selecting authority ("SSA"), source selection evaluation board ("SSEB") and performance work statement ("PWS") team. OMB Circular No. A-76 (2003), Attachment B.

transportation, and any other items and services necessary." *Id.* at 535. In September 2004, the Corps, on behalf of the MEO, sought notices of interest for private entities interested in assisting the MEO prepare the Agency Tender. *Id.* at 8. The Corps issued a Request for Quotations ("RFQ") on December 16, 2004, to those parties interested in assisting the MEO. *Id.*

The RFQ made clear the selected offeror was to participate with the MEO team in competing under the Corps' A-76 IM/IT public-private competition. *Id.* The RFQ also specifically required the selected offeror to be capable of providing efficient and effective IM/IT support to the MEO in meeting requirements of the A-76 IM/IT competition. Pl.'s Mem. Supp. TRO, Ex. 7. Under the RFQ, the selected offeror would incur the costs of preparing the MEO's Agency Tender. *Id.* As part of developing the MEO's Agency Tender the selected offeror and the MEO would delineate the work to be performed by the selected offeror if the MEO's Agency Tender was successful. *Id.* The selected offeror and the MEO would negotiate a final contract that would be held in abeyance until after the A-76 competition was completed. *Id.* The company that ultimately assisted the MEO with the Agency Tender, would not be allowed to participate in the A-76 competition independently. *Id.* Thus, potential offerors had to decide whether they wished to participate with the MEO in the competition or compete on their own. *Id.*

Lockheed submitted an offer in response to the Corps' December 16, 2004 RFQ and in February 2005, was selected to assist the MEO in preparing the Agency Tender for the A-76 competition. AR 8. On June 28, 2005, the Corps issued Solicitation No. W912DR-05-0001 "as a standard competition under OMB Circular A-76." *Id.* "The solicitation contemplated a firm-fixed price plus award fee/cost contract with some cost reimbursable items. Award was to be based upon the lowest cost technically acceptable offer or tender." *Id.* In response to the solicitation, the Corps received two proposals on October 21, 2005—the MEO's Agency Tender and a proposal from Northrop Grumman Information Technology, Inc. ("Northrop"). On June 21, 2006, the Corps issued its notice of intent to award a letter of obligation to the MEO. *Id.* at 14.

Following the Corps' notice, Northrop requested and received a debriefing from the Contracting Officer ("CO") on June 30, 2006. *Id.* At the debriefing, Northrop learned that its proposal was technically acceptable, but priced far in excess of the technically acceptable MEO's proposal. *Id.* at 9331; Pl.'s Mem. Supp. TRO 6-7.

On August 28, 2006, Northrop filed a complaint under seal pursuant to 28 U.S.C. § 1491(b) and RCFC Appendix C, requesting injunctive, declaratory and other relief to prohibit the Corps from awarding a letter of obligation to the MEO. *See* Pl.'s Comp. ¶ 6. As part of its complaint, Northrop claimed the Corps failed to conduct a reasonable cost realism and price analysis of the MEO's Agency Tender and unreasonably determined the MEO's Agency Tender was technically feasible. *Id.* at ¶¶ 112, 118. According to Northrop, the MEO simply could not supply IM/IT services detailed in the solicitation at the cost and manpower levels the MEO's Agency Tender represented. *Id.*

To protect the parties' confidential and proprietary information, the Court issued a Protective Order on August 31, 2006. *See* Order dated August 31, 2006. As part of that order "independent consultants and experts assisting counsel in connection with the litigation," can gain admission to protected material covered by the order. *Id.* at 1. Such an admission is automatically granted two

business days after filing an application for access, unless a party objects to the admission. *Id.* at 2. The Protective Order also has provisions for filing redacted copies of pleadings and other documents produced during the current action after the other party had a chance to review the proposed redactions. *Id.* at 2-3.

On September 7, 2006, the government filed the Administrative Record under seal. On September 13, 2006, the Court conducted a status conference with Northrop and the government to discuss the possibility of supplementing the Administrative Record. *See* Scheduling Order dated Sept. 13, 2006. At that status conference Northrop indicated that it wished to retain an expert to conduct a price analysis and cost realism of the MEO's Agency Tender, the results of which could then be added to the record in the form of an expert report or affidavit. *Id.* The Court set a briefing schedule and oral argument to address Northrop's request to supplement the Administrative Record. *Id.*

On September 15, 2006, Lockheed submitted a motion to intervene pursuant to RCFC Rule 24(a), solely for "the limited purpose of protecting its trade secrets and other proprietary information from potential release." Lockheed's Mot. 1. Lockheed alleged that in the course of assisting the MEO in developing the Agency Tender, Lockheed "provided its proprietary process and methodologies to the MEO under a written agreement of confidentiality." *Id.* at 3. Lockheed's proprietary information was then "incorporated throughout the Agency Tender." Lubniewski Decl. ¶ 4. It was these proprietary processes and methodologies that allowed the MEO to submit an Agency Tender for hundreds of millions of dollars less than Northrop's proposal. *Id.* In its motion, Lockheed specifically requested that its counsel be allowed to: (1) determine whether its proprietary and confidential information is revealed in the record; (2) scrutinize any expert who may be given access to Lockheed's proprietary and confidential information under the Protective Order; (3) monitor and seek to prevent release of Lockheed's proprietary and confidential information during the Court's proceedings by seeking, for example, partial redactions to the parties' filings; (4) seek limitations on any future use of Lockheed's information by the parties and those allowed under the Court's Protective Order; and (5) protect against its proprietary and confidential information being made public at the conclusion of the proceedings. Lockheed's Mot. 9.

Lockheed maintains that it has an interest in preserving its trade secrets contained in the Administrative Record and it may be impaired from doing so unless it is allowed to intervene. *Id.* at 6-7. Lockheed claims that as a practical matter the defendant's and its interests are so divergent that Lockheed is not adequately represented in the instant case by the government. *Id.* at 7. Lockheed also raises concerns that the Protective Order would allow: (1) almost "automatic" admission of experts hired by the parties to protected information, such as the Administrative Record if no objection is proffered by any party; and (2) publication of redacted version of any documents filed in this case. *Id.* at 6. Lockheed fears that keeping the status quo would allow future competitors to learn proprietary trade secrets that enabled Lockheed to assist the MEO in developing a proposal hundreds of millions of dollars below the competition's. *Id.* Although the Protective Order contains safeguards designed to prevent disclosure and misuse of confidential and proprietary

information,[3] Lockheed contends that these protections could be ineffective as any expert may not as a practical matter be prevented from using what they learned in future bids. *See* Lubniewski Decl. ¶¶ 13-15.

Northrop opposes Lockheed's intervention and filed a response to Lockheed's Motion on September 25, 2006. Northrop raises four arguments in support of its opposition. First, Lockheed's interests do not justify intervention, since Lockheed stands in the same position as countless other subcontractors that submit their proprietary information in the process of government procurements. Therefore, allowing Lockheed to intervene risks opening a "Pandora's Box" of all future contractors and subcontractors joining in and unnecessarily complicating future bid protests. Pl.'s Resp. 8-9. Second, Lockheed's ability to protect its interests is not impeded by the disposition of this action. The harm Lockheed fears requires a "long chain of purely speculative possibilities" in order to come to fruition and there is no evidence Lockheed can point to showing that a harm has occurred or is imminently about to occur. *Id.* at 9-10. Third, Lockheed's interests are adequately protected by the defendant. When the government is a party or when the potential intervenor shares the same "ultimate objective" as an existing party, there is a presumption that the intervenor's interests are adequately represented. Further, the government has a statutory obligation to protect Lockheed's information and Lockheed's counsel can work cooperatively with the defendant's counsel to sufficiently protect Lockheed's secrets without necessitating intervention. *Id.* at 10-13. Finally, Lockheed's proposed limited intervention is overly broad. Lockheed does not need immediate intervention to sufficiently protect its interests. Even if the government does not provide adequate protection, Lockheed can protect its own interests by being admitted under the Protective Order at the close of proceedings. *Id.* at 13-16. Northrop argues that Lockheed's "true intent [is] to become a *de facto* party in this litigation." *Id.* at 16.

The defendant neither supports nor opposes Lockheed's motion for partial intervention. Although the government professed a formal neutrality, its counsel conceded that Lockheed's intervention could very well be appropriate, because the government may at times have less incentive to protect Lockheed's proprietary trade secrets, thereby creating a divergence of interests. Hr'g Tr. 56-8.

## DISCUSSION

Lockheed argues that it is entitled to intervene as a matter of right pursuant to RCFC Rule 24(a). RCFC Rule 24(a)(2) provides:

---

[3] For example, in addition to the previously mentioned requirement of serving other parties with proposed redactions to pleadings and other documents produced during this action, the application for expert consultant access under the Protective Order requires that the expert not be involved in competitive decision making for any "firm that might gain a competitive advantage from access to the information disclosed under the Protective Order." RCFC Form 10, ¶ 3. The application also forbids the expert from disclosing "any protected information to any individual who has not been admitted under the Protective Order by the court." *Id.* at ¶ 6. The application further requires the expert to abstain for two years from engaging in preparation of proposals to any agency of the United States government which a party to this proceeding may be competing. *Id.* at ¶ 7.

> **(a) Intervention of Right**. Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In considering a motion to intervene under RCFC Rule 24(a), the Court must construe the rule's requirements in favor of intervention.[4] *Am. Maritime Transp., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989) (observing that "the requirements for intervention are to be construed in favor of intervention."). *See Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (construing Rule 24(a) "liberally in favor of potential intervenors."); *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999) ("Rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor."); *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) ("[A]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors."). *See also Armour of Am. v. United States*, 70 Fed. Cl. 240, 243 (2006); *Am. Renovation & Constr. Co. v. United States*, 65 Fed. Cl. 254, 257 (2005); *Klamath Irrigation Distr. v. United States*, 64 Fed. Cl. 328, 332 (2005); *Anderson Columbia Envt'l, Inc. v. United States*, 42 Fed. Cl. 880, 881 (1999).

The genesis of this liberal construction is Rule 24(a)(2)'s focus on practicality. Thus, the rule permits intervention of right when the applicant "*claims an interest*" whereby the disposition of the action "*may as a practical matter* impair or impede the applicant's ability to protect that interest . . ." RCFC Rule 24(a)(2) (emphasis added). The rule's practical bent was a reaction to the original version of the rule that provided for intervention of right only when: (1) a statute conferred an unconditional right to intervene; (2) the movant was "bound by a judgment in the action;" or (3) the movant was "so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court or an officer thereof." Fed. R. Civ. P. 24(a)(1)-(3) (amended 1966), *quoted in Formulabs, Inc. v. Hartley Pen Co.*, 275 F.2d 52, 55 (9th Cir. 1960).

In 1966, when the rule was liberalized, the Advisory Committee noted that the earlier wording of the rule was "unduly restricted" and prone to "poor results." Fed. R. Civ. P. 24 advisory committee's note. Accordingly, the Committee recommended that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."[5] *Id.* *See Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir.

---

[4] Since RCFC Rule 24 is nearly identical to Fed. R. Civ. R. 24, other federal cases interpreting Federal Rule 24(a) are persuasive in interpreting RCFC Rule 24(a). *Am. Maritime Transp.*, 870 F.2d at 1560 n.4; *Armour of Am.*, 70 Fed. Cl. at 243 (2006).

[5] Heeding the concerns expressed by the Advisory Committee, the D.C. Circuit noted the availability of partial intervention as of right—an intervention less than full party intervention. *Smuck*, 408 F.2d at 179 ("The occasions upon which a petitioner should be allowed to intervene under Rule 24 are not necessarily limited to those situations when the trial court should compel him to become a party

1969) (construing the 1966 amendment to the intervention rule as liberalizing the definition of an interest, noting that it would be unfortunate "to allow the inquiry to be led once again astray by a myopic fixation upon 'interest.'"). *See also Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) ("In determining whether intervention is appropriate we are guided primarily by practical and equitable considerations. We generally interpret the requirements broadly in favor of intervention."); *United States v. Hooker Chems. & Plastics*, 748 F.2d 968, 983 (2d Cir. 1984) ("The 1966 Amendments focused on abandoning formalistic restrictions in favor of 'practical considerations' to allow courts to reach pragmatic solutions to intervention problems.").

Because Rule 24(a)(2) is triggered when an applicant "*claims* an interest" that "*may* as *a practical matter*" be impaired or impeded, a motion to intervene "is in essence a question of standing," in that it only requires the movant to make well-plead allegations. *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1291 (D.C. Cir. 1980) (noting that in determining intervention of right, "we must accept a party's well-pleaded allegations as valid," and citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). *See United States v. City of Los Angeles,* 288 F.3d 391, 401 (9th Cir. 2002) (opining that "the relevant inquiry is whether [the action] 'may' impair rights 'as a practical matter' rather than whether [it] will 'necessarily' impair them."); *Sierra Club v. Glickman,* 82 F.3d 106, 109 (5th Cir. 1996) (concluding that the term "may" requires only that an interest only "potentially" be impaired or impeded); *Am. Renovation & Constr. Co.*, 65 Fed. Cl. at 263-64 (finding the *possibility* a plaintiff could settle its claim for an improperly low amount, while not particularly persuasive, sufficient to meet the practical impairment requirement).

Consequently, a determination of the merits of the potential intervenor's allegation is not appropriate when addressing the motion to intervene. *Am. Tel. & Tel. Co.*, 642 F.2d at 1291; *Turn Key Gaming*, 164 F.3d at 1081 ("An application for intervention cannot be resolved by reference to the ultimate merits of the claim the intervenor seeks to assert unless the allegations are frivolous on their face."); *Klamath Irrigation Dist.*, 64 Fed. Cl. at 332 (noting that a proof requirement for Rule 24(a) motions would "run counter to the general thrust of courts in construing the new version of Rule 24(a) in favor of intervention").[6] Instead, a party's well-plead allegations are accepted as valid. *Am. Tel. & Tel. Co.*, 642 F.2d at 1291. *See Armour of Am.*, 70 Fed. Cl. at 243 ("[T]he Court must accept the moving party's well-pleaded allegations as valid."); *Am. Renovation & Constr. Co.*, 65 Fed. Cl. at 260 ("Generally, courts will accept as true all well-plead, nonconclusory allegations in the motion to intervene . . . absent sham, frivolity, or other objections.").

Accordingly, a potential intervenor must file its motion timely and meet all three requirements of Rule 24(a)(2): (1) an interest subject to the action; (2) that the ability to protect the

---

under Rule 19") (citing David L. Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators*, 81 Harv. L. Rev. 721, 757-59 (1968) and Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure* (I), 81 Harv. L. Rev. 356, 400-07 (1967)).

[6] *But see Freeman v. United States*, 50 Fed. Cl. 305, 309 (2001) (requiring that applicants must "prove" an interest related to property subject to the action of the court). The Court feels, however, that is contrary to the majority rule.

interest as a practical matter may be impaired; and (3) the interest is not adequately represented by the existing parties. The timeliness of Lockheed's motion for limited intervention is not disputed. To the other requirements of the rule, the Court now turns.

**A. Does Lockheed Have a Protected Interest as Defined by Rule 24(a)(2)?**

As an initial matter, Lockheed must show for intervention of right that it has an interest in the property which is subject to the action before the Court.[7] RCFC Rule 24(a)(2). This is not a very high barrier. To be sure, neither plaintiff nor defendant at the hearing on October 3, 2006, disputed that Lockheed satisfies this "interest" requirement.[8] This is not surprising given the relative ease of satisfying this requirement.[9]

Indeed, Lockheed's trade secrets and proprietary information are the very type of interest the protection of which justifies intervention under Rule 24(a). *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003-04 (1984) (holding that trade secrets are a valid a property interest, entitled to Fifth Amendment protection). *See also Armour of Am.*, 70 Fed. Cl. 243-44 (2006) (finding trade secrets and confidential research information a sufficient interest to justify intervention under Rule 24(a));

---

[7] The parties do not dispute whether Lockheed meets the requirement in RCFC Rule 24(a) that Lockheed's interests are "the subject of the action." While the Federal Circuit has not clarified the meaning of the term "action" in RCFC Rule 24(a), other courts have defined the term liberally to include property or other interests directly affected by any ruling of the trial court, rather than solely applying to disposition of the case as a whole. *See Am. Tel. & Tel. Co.*, 642 F.2d at 1292 (barring "intervention for collateral discovery issues merely because they do not concern the subject matter of the overall action would in many cases defeat the general purpose of intervention"); *Formulabs*, 275 F.2d at 55-56 (holding that under old Rule 24(a) the possible revelation of putative intervenor's trade secrets, an issue collateral to the primary dispute, was grounds for allowing intervention of right). *See also Armour of Am.*, 70 Fed. Cl. at 244 (holding the term "action" need not be limited to the primary dispute of the action, but can concern a collateral matter).

[8] Counsel for plaintiff stated, in part: "I think it is important to remember Northrop Grumman is not saying that Lockheed Martin has no trade secrets, has no proprietary information residing in the record in this case." Hr'g Tr. 50. Likewise, counsel for defendant stated: "I think that it is not speculation that there are trade secrets. Everybody agrees upon that." *Id.* at 61.

[9] In general, the interest must be one recognized by law. *See, e.g., Am. Maritime Transp.*, 870 F.2d at 1562 ("'the interest [must] be one which the substantive law recognizes as belonging to or being owned by the applicant,'" (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984))); *Am. Renovation & Constr. Co.*, 65 Fed. Cl. at 260. In determining whether a certain interest qualifies a party for intervention, it is generally held that "interest in property are the most elementary type of right that Rule 24(a) is designed to protect." *Armour of Am.*, 70 Fed. Cl. at 243 (quoting 7C Wright & Miller, *Fed. Practice & Procedure* § 1908, at 272 (2d ed. 1986)).

*Honeywell Int'l Inc. v. United States*, 71 Fed. Cl. 759, 765 (2006) (finding an interest in a patent a sufficient interest for intervention of right under RCFC Rule 24(a)); *Am. Tel. & Tel. Co.*, 642 F.2d at 1285 (allowing intervention of right under Rule 24(a) to protect the intervenor's interest in attorney work product material); *Formulabs*, 275 F.2d at 52 (finding an interest in a trade secret sufficient interests for intervention of right under Rule 24(a)).

Plaintiff's principal argument under this section, however, is that Lockheed's trade secrets are not shielded by Rule 24(a)(2) because such interests are "indirect"—that is, any possible harm to Lockheed's interests will not directly relate to *any* decision rendered by this Court in the case at bar.[10] For this "remoteness" proposition, plaintiff primarily rely on *American Maritime Transport*.

In that case, the Aeron Marine Shipping Company (Aeron), sought to intervene of right in an action between the American Maritime Transport, Inc. (AMT) and the U.S. Maritime Administration, whereby a statutory subsidy for (only) commercial shipping of grain cargoes was denied to AMT because the shipment was made directly to the government of Israel. *Am. Maritime Transp.*, 870 F.2d at 1559-60. Areon argued that determination of the action would effect its future shipping business. *Id.* at 1560. It is true that in *American Maritime Transport* the Federal Circuit did, as plaintiff points out, reject intervention of right because it was based on a fear of a contingent future event (here, subsidized competition) that "may never arise." *Id.* at 1561 ("Intervention is proper only to protect those interests which are 'of such a *direct* and *immediate* character that the intervenor will either gain or lose by the *direct* legal operation and effect of the judgment,'" (quoting *Am. Tel. & Tel. Co.*, 642 F.2d at 1292) (emphasis added)). But intervention was also rejected because any hypothetical harm was "indirect," as well as "contingent," since the harm could not be immediately caused by the denial of the actual subsidy in the case. *Id.* In other words, the Federal Circuit rejected intervention because Aeron's interest was considered *both* indirect and contingent to the lawsuit at hand.

But, such is not the case in Lockheed's motion. Given the uncontested notion that Lockheed's trade secrets were used by the MEO in the Agency Tender, it is perfectly conceivable that denial by this Court of Lockheed's application for limited intervention might *directly* impair Lockheed's ability to protect its trade secrets. For instance, the Court generally opens sealed materials in a bid protest to the public five years after entry of final judgment. RCFC Rule 77.3(d). *See Formulabs, Inc.*, 275 F.2d at 55-56 (holding that possible revelation of putative intervenor's trade secrets during adjudication of pending action is grounds for allowing intervention of right). And, without a limited intervention, it is doubtful that Lockheed could protect its rights in subsequent court proceedings.

The Court now turns to a lengthier discussion of the requirement of Rule 24(a)(2) for a "practical impairment" of a potential intervenor's ability to protect its interests. So too, the Court

---

[10] Plaintiff makes this argument in a section of its brief relating to Rule 24(a)(2)'s "impairment" prong. Pl.'s Resp. 9-10. But this argument is seated in the wrong pew. Rather, it relates to Rule 24(a)(2)'s requirement that the "interest" be the "subject of the action." *Am. Maritime Transp.*, 870 F.2d at 1561-62. As such, the plaintiff's "indirect harm" argument is properly addressed by the Court in this section entitled "protected interest."

will in this section address the rule's last category—whether the potential intervenor's interests can be adequately represented by the existing parties.

**B. May Lockheed's Ability to Protect Its Property Interest as a Practical Matter Be Impaired by the Action before the Court?**

Addressing the "practicality" requirement of RCFC Rule 24(a)(2), plaintiff maintains that even a "partial" intervention of right is unnecessary because the Protective Order itself provides Lockheed with more than an adequate safeguard. Pl.'s Resp. 9; Hr'g Tr. 52. Specifically, plaintiff observes that all documents and files provided to it are already under the aegis of the Protective Order. Pl.'s Resp. 4. And, thus, plaintiff emphasizes that Lockheed has nothing to fear from experts given access to Lockheed's purported trade secrets because the Protective Order both prohibits disclosures of such secrets in "perpetuity" and any such expert from working for a competitor of Lockheed's for two years. Hr'g Tr. 38. Furthermore, as to the nemesis of public disclosure of trade secrets, plaintiff points out that the Order requires the redaction of protected information from the pleadings and other documents produced throughout this action. *Id.* at 53. To support its position that the Protective Order is sufficient, plaintiff stresses that no protected "information has been inadvertently disclosed, and no allegations of inadvertent disclosure have been made by either party." Pl.'s Resp. 4, citing *Armour of America*, 70 Fed. Cl. at 240.

This last point is critical to plaintiff because in the absence of disclosure, Lockheed's motion is characterized as one impermissibly "based upon mere speculation," insufficient to support a RCFC Rule 24(a) motion. *Id.* at 9. Indeed, as plaintiff argues, Lockheed's purported injury could occur "'only if each and every one of a chain of other possible, but not certain, events were to take place.'"[11] *Id.* at 9 (quoting *Am. Maritime Transp.*, 870 F.2d at 1561). Because every contingency occurring "is not a real world possibility," plaintiff contends that conversion and disclosure of Lockheed's proprietary information is improbable. *Id.* at 3 Nevertheless, plaintiff's arguments are unpersuasive. The cornerstone of plaintiff's edifice constructed to oppose partial intervention is the complaint that there is no showing of an actual impairment. But this ignores the plain meaning of Rule 24(a) and the history behind its amendment, amply discussed above. *See Am. Tel. & Tel. Co.*, 642 F.2d at 1291; *Smuck*, 408 F.2d at 178. Indeed, under the rule, intervention of right must be granted when the applicant "claims" that the disposition of the action "*may* as a *practical matter*" impair its ability to protect its interests. RCFC Rule 24(a) (emphasis added). To require any more from an intervenor than the potential for impairment would impose some sort of proof requirement that is not in keeping with construing RCFC Rule 24(a) in favor of intervention. *See Am. Maritime Transp.*, 870 F.2d at 1561. To be sure, accepting plaintiff's interpretation would place trial courts in the untenable position of having to make an initial determination as to the merits of intervention allegations—something inappropriate for considering a Rule 24(a) motion. *Turn Key Gaming*, 164 F.3d at 1081 (noting that a decision on the merits is inappropriate for a Rule 24(a) motion); *Am. Tel. & Tel. Co.*, 642 F.2d at 1291 (requiring only well-plead allegations for a Rule 24(a) motion).

---

[11] For instance, how does Lockheed know whether plaintiff's experts admitted under the Protective Order are the type of experts who could even prosper from learning of Lockheed's proprietary information (they could, hypothetically, be academics, not competitors), or will be averse to Lockheed in any future bid or other business endeavor?

Similarly, plaintiff's reliance on *Armour of America*, 70 Fed. Cl. at 240, for the proposition that an actual disclosure of a trade secret—or some other concrete showing of harm to the putative intervenor's property interest—must be made for intervention of right, is also not convincing. In *Armour of America*, the government inadvertently disclosed the third-party movant's trade secrets to the plaintiff. *Id.* at 242. While the court noted the disclosure of the trade secret undoubtedly impaired the movant's ability to protect it, *id.* at 245, it also ruled that the best way to prevent any further impairment of the movant's ability to protect its interests was to allow the movant to intervene to propose modifying the terms of the Protective Order. *Id.* Consequently, the court recognized that the impairment of the ability in the future to protect the interest is the requirement under RCFC 24(a), not simply the actual impairment of the interest itself.

Turning to the substance of plaintiff's proffered arguments, the Court observes the almost obvious—that the fear of disclosure and conversion of trade secrets on its face is a rational one. This is shown by the Protective Order, its purpose being to hinder the disclosure and misuse of confidential information. The issue, then, is not whether Lockheed's concerns are factually true, but the degree of the efficacy of the Protective Order in addressing the issues at bar. To wit, a putative intervenor's motion to intervene will be successful to the degree it raises legitimate concerns not clearly rendered moot by the Protective Order.

The Protective Order contains both a proscription on outside experts that gained access to confidential materials from being involved in competitive bidding when any "firm . . . might gain a competitive advantage from access to the information disclosed under the protective order," as well as the two-year provision that mandates abstention by these experts from engaging in the preparation of competing bid proposals to any agency of the United States government which party to this proceeding may be competing. RCFC Form 10, ¶¶ 3, 7. And it is also significant that the Protective Order permits the parties to vary the two-year time period by stipulation, further showing that differing situations call for flexibility and differing degrees of protection. *Id.* at ¶¶ 7-8.

Because the need for limited intervention is inversely proportional to the effectiveness of the safeguards contained in the Protective Order, Lockheed's task is to justify its intervention with regard to that order's protections. Lockheed argues that intervention is justified to assure redactions to public releases of court filings of proprietary information because much of its confidential information in the record "would likely not appear sensitive to someone who does not work in this industry." Lubniewski Decl. ¶ 13; Hr'g Tr. 16. Thus, to Lockheed there exists a probability of an inadvertent (and possibly an advertent) misuse of the access to its trade secrets and proprietary information found in the record. The Protective Order's redaction provisions, Lockheed argues, will not guard against this scenario. *Id.* To be sure, no order could be drafted that adequately safeguards against this possibility. If all this be true—again, the Court must consider the veracity of Lockheed's contentions as a facial matter—it would certainly argue in favor of intervention by Lockheed to protect its secrets.

Concerning the efficacy of the Protective Order's other safeguards, while it is maybe true that Lockheed's "inability to compartmentalize" contention (that is, a consultant or expert admitted under the Court's Protective Order could pose a risk for disclosure, since the nature and extent of its proprietary information places "it beyond the capacity of anyone to retain in a consciously separate

category," Lubniewski Decl. ¶ 8) may trump the Protective Order's anti-disclosure provisions, it may also be true that this contention may turn out to be nothing more than psychobabble. So too, the factual veracity of Lockheed's contention that the present two-year abstention period is inadequate to protect its trade secrets, may prove to be a gross exaggeration. Hr'g Tr. 17. But the Court cannot ignore RCFC Rule 24(a)(2)'s presumption favoring intervention, and its mandate that intervention of right should be granted when the putative intervenor's ability to protect its interest "*may* as a practical matter" be impaired. Thus, close calls go to the potential intervenor—the "tie goes to the runner." One cannot say here with absolute certainty that Lockheed's concerns are invalid.

Accordingly, and *as a practical matter*, given the vagaries of legal enforcement of such devices as judicial protective orders, given the unreliability of memory (here, applicable as to when and where the experts learned of what may be a trade secret),[12] the possibility of disagreement as to what constitutes trade secrets and proprietary information in the record, and given the law's presumption favoring intervention, the Court is satisfied that this criterion of RCFC Rule 24(a)(2) is met.

**C. Is Lockheed's Property Interest Adequately Represented by the Existing Parties?**

The final requirement for intervention under RCFC Rule 24(a)(2) is whether or not the intervenor's interests are "adequately represented by existing parties." The burden of showing the inadequacy of representation clearly is "minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (stating "the requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."); *Cherokee Nation of Oklahoma v. United States*, 69 Fed. Cl. 148, 157 (2005) ("'The burden of demonstrating inadequacy of representation is not heavy' and is satisfied where the applicant shows that representation of its interests may be inadequate." (quoting *Klamath Irrigation Distr.*, 64 Fed. Cl. at 336)). Perhaps, another way of phrasing the burden requirements of the third prong of Rule 24(a)(2) is that the party opposing intervention must make a substantial showing of the adequacy representation.[13]

---

[12] And, memory as to the factual details in this case and the position the parties took. The undependability of memory (whether advertent or inadvertent) is best characterized by this quip by Samuel Clemens (a.k.a. Mark Twain), who, when he was younger "could remember anything whether it happened or not." Available at http://www.quotationspage.com./quote/32948.html.

[13] It should be noted that the Federal Circuit has not decided the issue of who bears the burden of showing the adequacy/inadequacy of the representation by existing parties and the Court of Federal Claims appears split on the issue. *Compare Armour of Am.*, 70 Fed. Cl. at 245 ("The burden is on those opposing intervention to show that representation of the absentee is adequate."), *with Cherokee Nation of Oklahoma*, 69 Fed. Cl. at 157 (noting that the movant "must demonstrate that its interest is not 'adequately represented by the existing parties.'"). *See also Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) (noting that even within the D.C. Circuit there were inconsistencies but in any event the Supreme Court had made it clear "that the standard for measuring inadequacy is low.").

The 1966 amendment to Federal Rules of Civil Procedure Rule 24 seem to have altered who

Lockheed argues that plaintiff has no reason to protect Lockheed's trade secrets and by opposing Lockheed's motion "'has further evidenced its disinterest in ensuring adequate protection of proprietary information.'" Lockheed's Mot. 7 (quoting *Armour of Am.*, 70 Fed Cl. at 246). Lockheed also argues that defendant does not provide it with adequate representation because it could not be expected to be familiar with how a potential competitor might use the proprietary information contained in the Administrative Record. *Id.* at 7-8. Similarly, Lockheed contends that defendant would not "scrutinize and analyze each request for access or redaction in the same manner or with the same degree of intensity" that Lockheed would, *id.* at 8, and that defendant's focus is on prevailing in the protest—not protecting Lockheed's trade secrets, *id*.

Northrop, on the other hand, argues that there are two situations where the burden shifts to the potential intervenor and there is a presumption of adequate representation: when the potential intervenor has the "same ultimate objective" as a party to the suit, *see Am. Renovation and Const.*, 65 Fed Cl. at 264, and when the government is a party. Pl.'s Resp. 11.[14] Nevertheless, the very position taken by the government and the statements made by its counsel at oral argument on the instant motion entirely negate plaintiff's argument.

As an initial matter, the Court observes that it is the idiosyncracies of an A-76 bid protest that makes this case and the intervention motion unusual. In an ordinary bid protest, counsel for the

---

bears the burden on showing adequacy of representation. Prior to 1966, Rule 24 allowed a potential intervenor to intervene "when the representation of the applicant's interests by existing parties is or may be inadequate." Fed. R. Civ. P. 24(a)(2) (amended 1966) *quoted in Formulabs*, 275 F.2d at 55. Following the 1966 amendment, a potential intervenor could intervene as of right "unless the applicant's interest is adequately represented." Fed. R. Civ. P. 24(a). The presence of the word "unless" unambiguously creates a presumption that existing representation is inadequate, requiring the party opposing intervention to show that it is adequate. *Am. Tel. & Tel. Co.*, 642 F.2d at 1293. *See also Smuck*, 408 F.2d at 181 (holding "As the conditional wording of Rule(a)(2) suggests in permitting intervention unless the applicant's interest is adequately represented by existing parties, the burden is on those opposing intervention to show adequacy of the existing representation"); *Nuesse*, 385 F.2d at 702 ("While the change in wording does not relate to any change in standard as such, it underscores both the burden on those opposing intervention to show the adequacy of representation and the need for a liberal application in favor of permitting intervention."); 7A Wright & Miller, *Federal Practice and Procedure* § 1908-1909.

[14] The Court finds plaintiff's latter argument clearly unpersuasive. A presumption in favor of adequate representation by the government generally only arises in situations when the government is acting as *parens patriae*. *See Mills Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 1000 (8th Cir. 1993) (presumption that the state will represent the interests of its citizens is premised on *parens patriae* doctrine); *Diamond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (holding that District of Columbia "would be shirking its duty if it were to advance this narrow interest at the expense of its representation of the general public interest. Since [Intervenor's] interest cannot be subsumed within the shared interest of the District of Columbia, no presumption exists that the District will adequately represent its interests."). This, of course, is not the situation here.

government represents the agency's interests as it relates to the decision making process. Indeed, the defendant in standard bid protests does not have a proverbial dog in the fight; it is disinterested in who wins the bid and only concerns itself with the process. In such circumstances, the winning bidder often intervenes to protect its interests in maintaining the procurement.[15] *See CIGNA Gov. Servs., LLC v. United States*, 70 Fed. Cl. 100, 109 (2006); *Four Points By Sheraton v. United States*, 66 Fed Cl. 776, 777-78 (2005); *Int'l Res. Recovery, Inc. v. United States*, 60 Fed. Cl. 1, 1 & n.2 (2004). However, because the current action occurs in the context of an A-76 competition, the winning bidder, the MEO, does not have independent representation. Rather, the MEO is represented by counsel for defendant. This forces defendant's counsel to wear multiple hats at the same time. Counsel must represent the agency's decision making process as carried out by the Source Selection Authority ("SSA"), the MEO's financial interest in winning the bid, as well as the government's interest in enforcing the policy of the Fair Act. Although in most instances these interests and the Fair Act's decision making process align, this may not always be the case. All this is amply demonstrated by a colloquy between the Court and Mr. Prouty, defendant's counsel, at oral argument:

> **As to the issue of who the government represents:**
>
> **Court:** Which of the three hats that we talked about are you going to wear to the podium?
>
> **Mr. Prouty:** The one that is most comfortable, and that is the hat essentially representing the SSA, the source selection authority. Your Honor is absolutely right that the FAIR Act puts the government in the somewhat awkward position of having to protect the source selection authority's decision and also in a sense to act the way a traditional intervenor works in a bid protest.
>
> **Mr. Prouty:** To be frank, generally we've approached it as being the SSA's attorney. My agency counsel is a uniformed counsel for the Army and a counsel for the Corps of Engineers who is not from the MEO, but is essentially the source selection authority's counsel.
>
> **As to the issue of adequacy or efficacy of representation:**

---

[15] It is for this reason the Court finds unpersuasive plaintiff's concerns that allowing Lockheed to intervene will open a "Pandora's Box" of innumerable contractors and subcontractors seeking to join future bid protests. Pl.'s Resp. 8-9. The Court believes many subcontractors' interests in bid protests would be adequately represented by the intervening prime contractor. And unlike plaintiff's characterization of Lockheed's motion being overly broad, Lockheed's motion to intervene is quite limited—only to protect its trade secrets, not argue the merits of the protest. Allowing such a limited intervention further limits the number of potential intervenors interested in joining future actions. As a final matter, the Court notes that subcontractors have been allowed to intervene in bid protests in the past and the much feared "Pandora's Box" has remained closed. *See CHE Consulting, Inc. v. United States*, 71 Fed Cl. 634 (2006) (allowing a subcontractor to intervene under RCFC 24(b)(2)).

> **Mr. Prouty:** To the degree that I represent the MEO in protecting information [provided by] Lockheed Martin, I see it as a part of our responsibility as the government to protect protected information that's provided to us in any procurement, but I do not have the advantage of having the MEO sitting at the here as a full party as I would any other procurement just because of the oddities of A-76.
>
> **Mr. Prouty**: Primarily as [counsel for Northrop] was talking about the conversations we had in efforts to sort of protect Lockheed Martin's interests, it underscored essentially the game of telephone we were playing. I hear what he wants to do. I communicate to Lockheed Martin. They explain to me why they don't like it, and then I talk to [counsel for Northrop]. Of course, I cannot as directly communicate Lockheed Martin's concerns to any sort of pushback as it were from [Counsel for Northrop] as Lockheed Martin's attorney's could. . . . There are certainly circumstances which of course actually did lead to the filing of the motion by Lockheed Martin to partially intervene on the 15th where I won't say we had adverse interests, but we had divergent interests. It is absolutely correct, as [counsel for Lockheed] stated, that I do not feel as strongly about the number of years in the Protective Order as she does, as Lockheed Martin does. These are institutional reasons. I am not saying she is wrong, but it is obviously a decision about -
>
> **Court**: Just different interests.
>
> **Mr. Prouty**: Yes.
>
> **Court**: But the Department of Justice has an interest also in seeing that the purpose of the FAIR Act is enforced.
>
> **Mr. Prouty**: We certainly do . . . . To be candid, of course, the person who best understands what is proprietary information is Lockheed Martin and not us. . . . To that end we certainly think that our interests are divergent to some degree, and it would certainly be helpful and more productive than having me scrambling to understand Lockheed Martin's interests and funneling those to [counsel for Northrop]. Certainly there are times that they disagree - they already have - about what to do. Being put in the awkward position of having to sort of make arguments that they know far better than I do in my position.

Hr'g Tr. 54-61.

The *potential* for conflict between the roles the government has to play in an A-76 bid protest, as well as between it and Lockheed, could not be any clearer. To be sure, this situation is not unique. *See Diamond*, 792 F.2d at 193 (allowing an insurance company to intervene in suit challenging constitutionality of no-fault insurance limitations because the District of Columbia might

not adequately represent insurance company's financial concerns).[16] However, while it is true that the government has a statutory duty not to release Lockheed's proprietary information, *see* 10 U.S.C. § 2305(g); 41 U.S.C. § 253b(m); FAR 24.202; 5 U.S.C. § 552(b)(4); 41 U.S.C. § 423; 18 U.S.C. § 1905, it may very well not vociferously protect Lockheed's secrets as Lockheed would. This is, in fact, all but conceded by the government's counsel:

> **Mr. Prouty:** A decision about what is worth making the fight about that I could have a more divergent interest upon than Lockheed Martin can. I certainly don't want to fall down in obligation to protect protected information of any party in this lawsuit, whether Lockheed Martin or Northrop Grumman, who has provided information to the government for its decision. However, obviously our interests in that are going to be more strongly felt and more strongly advocated and more adequately and appropriately advocated by those who understand these things.

Hr'g Tr. 58.

Accordingly, it is quite clear to the Court that Lockheed's interests are not adequately represented by the existing parties and thereby satisfy the final requirement for intervention under RCFC Rule 24(a).

## CONCLUSION

Lockheed has demonstrated that it has an interest in this action, that the ability to protect that interest may be impaired by the disposition of the Court, and that its interest is not adequately protected by the existing parties. For the foregoing reasons Lockheed's motion for limited intervention is **GRANTED**. As such:

1. Consistent with the Opinion and Order of this Court, Lockheed shall be given access to the Administrative Record under the terms of the Protective Order for the following limited purposes:

(a) to raise objections to applications for admission under the Protective Order;
(b) to raise objections to redactions contained in the parties' submissions filed with the Court;
(c) to propose redactions to submissions filed with the Court by the parties;
(d) to propose redactions to the Court's interim final Opinion and Order in this case; and

---

[16] In *Diamond*, citizens who suffered injuries below the District's no-fault insurance limit, brought suit challenging the constitutionality of the law. *Diamond*, 792 F.2d at 193. State Farm Mutual Automobile Insurance Company was denied intervention by district court because the court believed that the District adequately represented State Farm's interest. The D.C. Circuit reversed, holding "[a] government entity such as the District of Columbia is charged by law with representing the public interest of its citizens. State Farm on the other hand is seeking to protect a more narrow and 'parochial' financial interest not shared by the citizens of the District of Columbia. . . . The results State Farm urges are not necessarily those that the District would advance as in the 'public interest.'" *Id.* at 192-93.

(e) to propose redactions to the record before the seal is lifted by the Court.

2. The parties shall provide Lockheed with all copies of submissions to be filed with the Court pursuant to ¶ 4 of the Court's Protective Order. Lockheed's access to these submissions is for the sole purpose of objecting to proposed redactions and proposing any further redactions as may be necessary. Any such objection or proposal raised by Lockheed shall be made pursuant to ¶ 4 of the Court's Protective Order.

Hereinafter, the style in this matter shall reflect that as above.

**IT IS SO ORDERED.**

s/*Lawrence J. Block*

**Lawrence J. Block**
**Judge**